OPINION OF THE COURT
 

 Alexander, J.
 

 The City has disqualified Peter Granelle from employment as a New York City police officer because of a presently asymptomatic back condition known as spondylolisthesis. In this proceeding, Granelle contends that the City’s disqualification of him constituted unlawful discrimination because of a disability prohibited by the Human Rights Law (Executive Law art 15). The State Division of Human Rights (Division) found in Granelle’s favor but a divided Appellate Division annulled the determination of the Division and dismissed Granelle’s complaint. We now reverse the order of the Appellate Division and reinstate the determination of the Division.
 

 In 1979 Peter Granelle was a candidate for appointment to the New York City Police Department. He passed both a written civil service examination and an "agility” test but during a preappointment medical examination, X rays revealed that he had a spinal condition known as spondylolisthesis. Pursuant to regulations promulgated by the New York City Department of Personnel, Granelle was automatically disqualified from employment with the police department because of this condition. After exhausting his administrative remedies under the Civil Service Law, Granelle commenced a proceeding with the New York State Division of Human
 
 *104
 
 Rights alleging that the City had unlawfully discriminated against him because of a physical disability.
 

 The Division conducted an investigation, made a finding of probable cause, and held a hearing before an Administrative Law Judge. Granelle testified that in the previous 10 years, his employment history consisted of various jobs in the heavy construction industry, including installation of cesspool systems which required lifting of cesspool covers weighing approximately 150 pounds. Granelle had also worked as a laborer and a truck driver, and at the time of the hearing was employed as a mason for the New York City Transit Authority. Granelle testified that, other than a pulled back muscle in 1976 or 1977, which did not cause him to miss any work, he never had any problems with his back and never failed to perform required tasks because of a physical disability. Granelle also testified that he was a volunteer fireman and never experienced any problems with his back while fulfilling his responsibilities as a fireman. He introduced into evidence a letter from his personal physician, Dr. Victor Gold, which acknowledged that X rays of Granelle revealed spondylolisthesis but noted that this condition is present in approximately 10% of the general population. It was Dr. Gold’s opinion that Granelle "would have no difficulty in performing the duties required of a New York City Police Officer.”
 

 The City tendered the testimony of Dr. Schein, an appeals examiner for the New York City Personnel Department, who concluded, based on his review of Granelle’s medical reports and X rays, that Granelle suffered from spondylolisthesis, a congenital widening of two vertebrae probably caused by a defect in the neural arch. Dr. Schein did not conduct a physical examination of Granelle. He indicated that in the early stages of the defect, there may be no clinical manifestations of its existence but that in his opinion there was a great likelihood of low back disability developing in the future. Dr. Schein admitted, however, that there were no reliable statistics regarding the likelihood of disability developing from spondylolisthesis and that it was very difficult to establish such statistics because a person with this particular condition would be asymptomatic in the early stages and would have no reason to know that the defect existed. Indeed, he conceded that in a certain percentage of individuals, disability may never develop. Dr. Schein referred to an Israeli study which concluded that persons with spondylolisthesis were more likely to suffer subsequent low back disability than were
 
 *105
 
 persons without the condition. Conceding that his opinion was not based on objective statistics, Dr. Schein nevertheless concluded that there was a 25%-50% higher probability of low back disability occurring in persons who suffer from this defect than in individuals without the defect. Dr. Schein offered the further opinion that if the disability was going to develop, it usually would occur within 10 to 20 years after discovery of the condition through X rays, and that the symptoms are most likely to start when a person is in his late twenties or early thirties. Dr. Schein agreed that up to 6% of the adult population has spondylolisthesis and that medical science did not know why the defect occurred or why symptoms develop in some but not all those afflicted. He also conceded that a person who could pass the "agility” test was presently able to assume the duties of a police officer.
 

 By stipulation of the parties, an independent orthopedist, Dr. Stanley Liebowitz, examined Granelle "to determine whether he is physically fit to perform police duty for the New York City Police Department”. Dr. Liebowitz’s report, which was received in evidence as a joint exhibit, found that the strength of Granelle’s extremities was normal as was the mobility of his back. It also confirmed that Granelle had spondylolisthesis, and thus "a statistically higher probability of symptoms developing compared to a similar person with normal back x-rays”. Dr. Liebowitz pointed out, however, that he could not make a specific prediction for Granelle although he opined that performing police functions would tend to aggravate the condition.
 

 The Administrative Law Judge (ALJ) sustained the complaint. She concluded that Granelle was a person disabled under the Human Rights Law and that there was no evidence in the record showing that Granelle, at the time of his disqualification or thereafter, was unable to perform the duties of a police officer, or that Granelle’s condition was an impediment to his performing those duties in a reasonable manner or that Granelle could not perform the duties of a police officer for an indefinite period of time and in a safe manner. Thus the ALJ held that the City failed to establish "a relationship between [Granelle’s] condition and his ability to engage, in a reasonable manner, [in] the activities of a police officer at the time of his disqualification, or thereafter”. The Commissioner of the Division subsequently adopted the findings and recommendations of the AU. In this proceeding commenced pursuant to Executive Law § 298, a divided Appel
 
 *106
 
 late Division annulled the Division’s determination and dismissed the complaint.
 

 Initially, we note that the scope of judicial review under the Human Rights Law is extremely narrow and is confined to the consideration of whether the Division’s determination is supported by substantial evidence in the record. Courts may not weigh the evidence or reject the Division’s determination where the evidence is conflicting and room for choice exists. Thus, when a rational basis for the conclusion adopted by the Commissioner is found, the judicial function is exhausted (Executive Law § 298;
 
 Matter of CUNY-Hostos Community Coll. v State Human Rights Appeal Bd.,
 
 59 NY2d 69, 75 [and cases cited therein]). The question, thus, is not whether we find the proof of discrimination convincing, but whether the Commissioner could do so
 
 (id.,
 
 at 81 [Wachtler, J., dissenting]). Our review, therefore, is limited to determining whether the Commissioner’s finding of employment discrimination in this case is supported by substantial evidence in the record.
 

 The Human Rights Law prohibits employers from discriminating against employees or job applicants because of a disability (Executive Law § 296). Here, there is no dispute that Granelle suffers from a disability as that term is defined under the Human Rights Law
 
 (see,
 
 Executive Law § 292 [21];
 
 State Div. of Human Rights [McDermott] v Xerox Corp.,
 
 65 NY2d 213, 219). He may not be subjected to discriminatory action based upon his disability, unless that disability renders him incapable of performing in a reasonable manner the activities involved in the job or occupation sought (Executive Law § 292 [21]; § 296). As we pointed out in
 
 Matter of Miller v Ravitch
 
 (60 NY2d 527, 532), the Legislature, in amending the Human Rights Law in 1979, specifically imposed an "individualized standard” such that the employer must demonstrate that the disability is such as would "prevent the complainant from performing in a reasonable manner the activities involved in the job or occupation sought”, failing which, the disability may not be the basis for rejecting the applicant
 
 (see also, Matter of Westinghouse Elec. Corp. v State Div. of Human Rights,
 
 49 NY2d 234, 238).
 

 The City, conceding that Granelle is presently able to perform the duties of a police officer in a reasonable manner,
 
 *107
 
 seeks to justify disqualifying him pursuant to Civil Service Law § 50 (4) (b)
 
 [1]
 
 based upon an asserted reasonable expectation that he will be unfit to perform the duties of a police officer some time in the future. The Division concluded that the City had failed to present sufficient evidence to establish a reasonable expectation that Granelle would be unable to perform his duties in the future. We agree.
 
 [2]
 

 All the evidence in this record indicates that Granelle is presently able to reasonably perform the duties of a police officer and will be able to do so for the foreseeable future. Any questions concerning his present physical ability to perform police duties were answered by his satisfactory performance of the "agility” test, and his prior employment as a laborer without significant back problems. The City’s assertion that there was a reasonable expectation that Granelle would be unable to reasonably perform such duties in the future finds no support in this record. At best, there was speculation that a person with spondylolisthesis had a greater statistical probability of suffering low back disability than a person with normal back X rays. Even the City’s expert conceded, however, that there are no reliable statistics concerning the incidence of disability resulting from an asymptomatic condition of spondylolisthesis. Thus, this record is barren of any satisfactory medical evidence to support a reasonable expectation that Granelle, in light of his particular medical history and present condition, will become unfit to reasonably perform the duties of a policeman in the future. Employment may not be denied based on speculation and mere possibilities, especially when such determination is premised solely on the fact of an applicant’s inclusion in a class of persons with a particular disability rather than upon an individualized assessment of the specific individual.
 

 
 *108
 
 Accordingly, the order of the Appellate Division should be reversed, and the determination of the State Division of Human Rights should be reinstated, with costs.
 

 Chief Judge Wachtler and Judges Simons, Kaye, Titone, Hancock, Jr., and Bellacosa concur.
 

 Order reversed, etc.
 

 [1]
 

 . Civil Service Law §50 (4) (b) provides, in relevant part, that an applicant may be disqualified if he is "found to have a physical or mental disability which renders him unfit for the performance of the duties of the position in which he seeks employment, or which may reasonably be expected to render him unfit to continue to perform the duties of such position”.
 

 [2]
 

 . Because we find substantial evidence to support the determination of the Division, we find it unnecessary to consider whether a reasonable expectation that Granelle will be unfit to continue to perform the duties of a police officer, if established, would be a valid basis for employment disqualification under the Human Rights Law.