■ In the Matter of NANCY L. HARRISON, Petitioner, v CHESTNUT DONUTS, INC., Doing Business as DUNKIN' DONUTS, et al., Respondents. [874 NYS2d 609]—

Peters, J. Proceeding pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Otsego County) to review a determination of respondent State Division of Human Rights which found that respondent Chestnut Donuts, Inc. did not engage in an unlawful discriminatory practice.

Petitioner has multiple sclerosis and is unable to walk or stand without the assistance of either a wheelchair, crutches or a walker. In July 2006, she was hired by Vicky Wycoff, a store manager at a Dunkin' Donuts franchise operated by respondent Chestnut Donuts, Inc. in the Village of Cooperstown, Otsego County, as a crew member in charge of distributing orders and receiving payment from customers at the drive-thru window. To accommodate petitioner's disability, Wycoff modified her job duties by eliminating tasks requiring movement around the store and placed an office chair at the drive-thru window so that petitioner could remain seated throughout her shift.

Three months later, in October 2006, Wycoff was terminated from her position for theft, and management of Chestnut Donuts was temporarily assumed by district manager Christina Mitcalf, who discovered a host of deficiencies attributable to

Wycoff such as overstaffing and the failure to document customer complaints and personnel matters. Days later, Mitcalf terminated six employees, including petitioner. By the end of the calendar year, another 10 employees were terminated.

Petitioner thereafter filed a verified complaint with respondent State Division of Human Rights (hereinafter SDHR) alleging that Chestnut Donuts had engaged in an unlawful discriminatory practice by terminating her employment on the basis of her disability. Following a hearing, an Administrative Law Judge (hereinafter ALJ) found that petitioner had failed to establish that the explanations provided by Chestnut Donuts for its actions were a pretext for illegal discrimination. The Commissioner of Human Rights fully adopted the findings of the ALJ and dismissed petitioner's complaint. Petitioner then commenced this proceeding, seeking to annul SDHR's determination, which was subsequently transferred to this Court.

SDHR's determinations are "entitled to considerable deference due to its expertise in evaluating discrimination claims" (*Matter of Matteo v New York State Div. of Human Rights*, 306 AD2d 484, 485 [2003]; *see Matter of New York State Off. of Mental Health v New York State Div. of Human Rights*, 53 AD3d 887, 889 [2008], *lv denied* 11 NY3d 713 [2008]). In reviewing SDHR's finding that Chestnut Donuts did not engage in an unlawful discrimination practice, "this Court is limited to determining whether the finding is supported by substantial evidence in the record and 'may not weigh the evidence or reject [SDHR's] determination where the evidence is conflicting and room for choice exists' " (*Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights*, 57 AD3d 1057, 1059 [2008], quoting *City of New York v State Div. of Human Rights*, 70 NY2d 100, 106 [1987]; *see Matter of New York State Energy Research & Dev. Auth. v New York State Div. of Human Rights*, 50 AD3d 1361, 1362 [2008]).

Here, petitioner established a prima facie case of discrimination by demonstrating that she suffers from a disability, was qualified to hold her position as a crew member with modified duties, and was discharged under circumstances giving rise to an inference of discrimination based on her disability (*see Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326, 330 [2003]; *Ferrante v American Lung Assn.*, 90 NY2d 623, 629 [1997]; *Matter of Bemis v New York State Div. of Human Rights*, 26 AD3d 609, 611 [2006]). The burden then shifted to Chestnut Donuts to rebut the presumption of discrimination by presenting evidence of "legitimate, independent, and nondiscriminatory reasons to support its

employment decision" (*Matter of Miller Brewing Co. v State Div. of Human Rights*, 66 NY2d 937, 938 [1985]; *see Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d at 330).

In this regard, Chestnut Donuts articulated that petitioner was terminated in connection with a storewide downsizing of staff and based upon complaints concerning her job performance. According to Mitcalf, upon a review of store operations following Wycoff's termination, it was determined that the store was overstaffed and a downsizing plan was put into place to discharge employees based upon job performance, customer complaints and seniority. Mitcalf testified that, despite a lack of documentation and an incomplete personnel file, she had received complaints from Wycoff that petitioner was slow and was mixing up orders when delivering them to the drive-thru customers. Mitcalf also stated that she personally received a customer complaint that petitioner was rude, and submitted documentary proof of such complaint. In further support of its position, Chestnut Donuts submitted proof of petitioner's comparative seniority, the staff size of other similar Dunkin' Donuts stores, and evidence that five other employees without disabilities were discharged on the very same day as petitioner. Proof was also presented that 10 additional employees were terminated prior to the new calendar year as part of the general overhaul of the store with the change in management. Notably, Mitcalf testified that petitioner's disability or the fact that she worked from a chair did not play a role in the decision to terminate her employment.

Given this evidence of legitimate, nondiscriminatory reasons for terminating petitioner, the burden returned to petitioner to prove that such reasons were "merely a pretext for discrimination by demonstrating both that the stated reasons were false and that discrimination was the real reason" (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]; *see Ferrante v American Lung Assn.*, 90 NY2d at 629-630). Here, petitioner failed to contradict Chestnut Donuts' proof that there was a general downsizing of the store or affirmatively demonstrate that the reasons set forth by Chestnut Donuts for her termination were false. Although petitioner testified that the owner of Chestnut Donuts informed her that she was being terminated because she was unable to perform all of the typical crew member duties, Mitcalf adamantly denied this assertion, and "we will 'not substitute [our] judgment for that of the agency where conflicting evidence exists, because it is for the agency to pass upon the credibility of witnesses and to base its inferences

on what it accepts as the truth' " (*Matter of Bemis v New York State Div. of Human Rights,* 26 AD3d at 612, quoting *Matter of State Div. of Human Rights v Muia,* 176 AD2d 1142, 1143 [1991]). Thus, on the record before us, we find that substantial evidence exists to support SDHR's determination that Chestnut Donuts' proffered reasons for terminating petitioner were not pretextual and, therefore, that petitioner's discharge was not the result of a discriminatory practice.

Cardona, P.J., Kavanagh and Stein, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.