■ In the Matter of Tosha Restaurants, LLC, Doing Business as Denny's, Petitioner, v New York State Division of Human Rights, Respondent. [911 NYS2d 734]—

Egan Jr., J. Proceeding pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Warren County) to review a determination of respondent which found petitioner guilty of an unlawful discriminatory practice based on disability.

Shane A. Fuller was hired in January 2007 for a part-time dishwasher position by petitioner, which operated a Denny's Restaurant located in the Town of Queensbury, Warren County. In addition to washing dishes, Fuller's duties included cleaning the rest rooms and taking out the garbage. He was scheduled to work approximately 10 to 15 hours per week. Shortly after accepting this part-time position, Fuller was also hired to work full time at a Lowe's Home Improvement store in Queensbury.

In late February 2007, Fuller was terminated from his position with petitioner. Thereafter, in April 2007, Fuller filed a complaint with respondent alleging that petitioner terminated his employment as a result of his disability, specifically psoriasis

and cellulitis affecting the back of his head, a condition from which Fuller has suffered continuously since 1986. Respondent investigated the complaint, determined that it had jurisdiction over the matter and that probable cause existed to believe that petitioner engaged in an unlawful discriminatory practice. A hearing was conducted in May 2008 before an Administrative Law Judge (hereinafter ALJ), who determined that Fuller established a violation of Executive Law § 296 (1) (a) when petitioner terminated Fuller. Specifically, the ALJ found that Fuller established his prima facie case for discrimination and that petitioner's explanations for Fuller's termination were either not legitimate or were pretexts for illegal discrimination. The ALJ recommended that Fuller be awarded damages for lost pay and reimbursement for counseling services in the amount of $4,776, and compensatory damages for pain and suffering in the amount of $10,000, with interest. In March 2009, the Commissioner of Human Rights issued a final order incorporating the ALJ's recommendation in its entirety. Petitioner commenced the instant proceeding seeking to annul the determination, and respondent cross-petitioned for review and enforcement of the order. Pursuant to Executive Law § 298, Supreme Court transferred the matter to this Court for review.

"The Human Rights Law prohibits employers from discriminating against employees due to a disability" (*Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights*, 57 AD3d 1057, 1058-1059 [2008], citing Executive Law § 296), and an employer must provide a reasonable accommodation for a disability (*see* Executive Law § 296 [3] [a]). However, "a disability that prevents an employee from performing the job requirements in a reasonable manner is not a protected disability within the meaning of the statute; the Human Rights Law should not be interpreted to prevent termination of a worker who is unable to perform his or her duties even with reasonable accommodation" (*Matter of Regal Entertainment Group v New York State Div. of Human Rights*, 61 AD3d 1102, 1104 [2009], *lv dismissed* 13 NY3d 893 [2009]).

Upon filing a claim with respondent, a complainant bears the burden of demonstrating a prima facie case of discrimination by showing that "he [or she] suffers from a disability, he [or she] was discharged, he [or she] was qualified to hold the position, and the discharge occurred under circumstances giving rise to an inference of discrimination based on his [or her] disability" (*id.* [internal quotation marks and citations omitted]; *see Matter of McEniry v Landi*, 84 NY2d 554, 558 [1994]; *Matter of Harrison v Chestnut Donuts, Inc.*, 60 AD3d 1130, 1131 [2009]). If a

prima facie case is established, the burden then shifts to the employer "to rebut the presumption of discrimination by presenting evidence of legitimate, independent, and nondiscriminatory reasons to support its employment decision" (*Matter of Harrison v Chestnut Donuts, Inc.*, 60 AD3d at 1131-1132 [internal quotation marks and citations omitted]; *see Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326, 330 [2003]), or that the complainant's disability prevented him or her from "performing the duties of the job in a reasonable manner" (*Matter of McEniry v Landi*, 84 NY2d at 558; *see Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100, 106 [1987]). If this is accomplished, then the burden shifts back to the complainant to establish that these reasons are " 'merely a pretext for discrimination by demonstrating both that the stated reasons were false and that discrimination was the real reason' " (*Matter of Harrison v Chestnut Donuts, Inc.*, 60 AD3d at 1132, quoting *Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 305 [2004]; *accord Matter of Suleman v State of N.Y. Dept. of Taxation & Fin.*, 27 AD3d 1040, 1042 [2006]). Respondent's "determinations are entitled to considerable deference due to its expertise in evaluating discrimination claims" (*Matter of Harrison v Chestnut Donuts, Inc.*, 60 AD3d at 1131 [internal quotation marks and citations omitted]), and our review is limited to whether respondent's findings are supported by substantial evidence (*see Matter of Pageau v Tolbert*, 304 AD2d 1067, 1068 [2003]). Thus, where the record contains conflicting evidence, we may not substitute our own judgment for that of respondent (*see Matter of State Div. of Human Rights [Granelle]*, 70 NY2d at 106; *Matter of Bracci v New York State Div. of Human Rights*, 62 AD3d 1146, 1149 [2009], *appeal dismissed* 15 NY3d 865 [2010]).

At the hearing on this matter, Fuller offered medical documentation and photographs to illustrate the extent of his medical condition which causes hair loss and scarring to Fuller's scalp at the back of his head. The condition is not observable when viewing Fuller from the front. Fuller testified that his condition had never been discussed prior to his termination, that he had never been disciplined for any conduct nor had he received any complaints regarding either his medical condition or his job performance. In fact, Fuller testified that he had received positive feedback from management. Fuller testified that when he was terminated, he was informed by Susan Ellsworth, petitioner's restaurant manager, that it was because of the scarring on the back of his head. The record also reflects that it was only after first observing Fuller's condition that petitioner's owner, Paul Amash, directed that he be terminated. Accordingly, Fuller pre-

sented a prima facie case of discrimination in that he was terminated from a position that he was otherwise qualified to perform on the basis of a disability. In opposition, petitioner offered three explanations for Fuller's termination—(1) that customers and coworkers had complained about Fuller's appearance, (2) that permitting Fuller to continue working at the restaurant would be a "violation of health code" because it feared Fuller was contagious, and (3) that because of a change in his schedule at Lowe's, Fuller's availability for his part-time job with petitioner was constantly changing and "becoming a problem."

Initially, we find substantial evidence in the record to support the determination that petitioner's first explanation failed to rebut Fuller's prima facie case of discrimination. There is no evidence that Fuller was unable to perform his job responsibilities because of his condition (see Matter of Miller v Ravitch, 60 NY2d 527, 531-532 [1983]), and employers "may not discriminate on the basis of their customers' preferences" (Ames v Cartier, Inc., 193 F Supp 2d 762, 769 [SD NY 2002] [internal quotation marks and citations omitted]).*

Petitioner's second explanation is also unavailing. While New York State Department of Health regulations prohibit a person from working in a food service establishment "while afflicted with a boil or infected wound" (10 NYCRR 14-1.70 [d]), petitioner never inquired into the specific nature of Fuller's condition to determine whether it was indeed infectious. Furthermore, while petitioner had a policy for addressing workers with open sores and other injuries by allowing them to go home until cleared by a physician, the owner conceded that this option was never discussed with Fuller. In contrast, Fuller presented a note from his physician that stated that his condition was not contagious and not a health concern while performing dishwashing duties. In according the appropriate deference to respondent (see Matter of Harrison v Chestnut Donuts, Inc., 60 AD3d at 1131), we find substantial evidence in the record for the determination that petitioner's second explanation was a pretext for discrimination.

Turning to petitioner's third explanation, Amash testified that Fuller's termination was based on his unavailability to work for petitioner because of his shift change at Lowe's and

---

* "The standards for recovery under the New York State Human Rights Law (see Executive Law § 296) are the same as the federal standards under title VII of the Civil Rights Act of 1964 (42 USC § 2000e et seq.)" (Forrest v Jewish Guild for the Blind, 3 NY3d at 305 n 3 [citation omitted]; see Ames v Cartier, Inc., 193 F Supp 2d at 767).

not because of his medical condition. However, Ellsworth testified that the condition of Fuller's head was, indeed, a factor considered. Amash also testified that he was surprised to see that Ellsworth had hired Fuller in light of his appearance, and he further stated that even if Fuller had no scheduling difficulties, he might have dismissed Fuller because of the condition of his head. The record also reflects that although Fuller held a full-time position at Lowe's and was scheduled to work 12 to 15 hours per week for petitioner, he routinely covered shifts for other employees and averaged approximately 20 hours per week working for petitioner. During one week, Fuller worked approximately 31 hours for petitioner. Fuller testified that he provided petitioner's scheduling manager with his work schedule from Lowe's and his hours with petitioner would thereafter be scheduled accordingly. While Fuller's change in shift at Lowe's required a change in his schedule with petitioner, it is undisputed that Fuller was never warned that he could be terminated based on his unavailability. In according the appropriate deference to respondent (see Matter of Harrison v Chestnut Donuts, Inc., 60 AD3d at 1131), we find substantial evidence in the record for the determination that petitioner's third explanation was also a pretext for discrimination.

Finally, with respect to petitioner's challenge to the damages awarded to Fuller, respondent has "broad powers to adopt measures which [it] reasonably deems necessary to redress the injury" (Matter of New York State Energy Research & Dev. Auth. v New York State Div. of Human Rights, 50 AD3d 1361, 1363 [2008] [internal quotation marks and citations omitted]), including awarding back pay and compensatory damages (see Executive Law § 297 [4] [c]). In reviewing the record, we find that the damages awarded are "reasonably related to the wrongdoing and [are] supported by substantial evidence" (Matter of State Div. of Human Rights v Muia, 176 AD2d 1142, 1144-1145 [1991]; see Matter of New Venture Gear Inc. v New York State Div. of Human Rights, 41 AD3d 1265, 1267 [2007]). The back pay awarded was calculated based on Fuller's average salary while employed by petitioner times the number of weeks he was unable to find comparable part-time employment. The award for compensatory damages was based on petitioner's conduct that resulted in, among other things, suicidal thoughts and Fuller's need to attend counseling for nine months at an out-of-pocket cost of $200. In this regard, the award for emotional pain and suffering "does not deviate markedly from comparable awards for similar injuries" (Matter of New York State Energy Research & Dev. Auth. v New York State Div. of Human Rights, 50 AD3d at 1363; see Matter of Mohawk Val. Orthopedics, LLP v

*Carcone,* 66 AD3d 1350, 1350 [2009]; *Matter of Iroquois Nursing Home, Inc. v New York State Div. of Human Rights,* 55 AD3d 1285, 1286 [2008], *lv denied* 12 NY3d 708 [2009]; *Matter of City of Fulton v New York State Div. of Human Rights,* 221 AD2d 971, 971-972 [1995]).

Spain, J.P., Kavanagh, Stein and McCarthy, JJ., concur. Adjudged that the determination is confirmed, without costs, and petition dismissed.