■ In the Matter of EARL BEMIS, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents. (Proceeding No. 1.) In the Matter of GENERAL ELECTRIC COMPANY, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents. (Proceeding No. 2.) [809 NYS2d 274]—

Rose, J. Proceedings pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Schenectady County) to review a determination of respondent New York State Division of Human Rights which, inter alia, found General Electric Company guilty of an unlawful discriminatory practice based on age.

Earl Bemis (hereinafter petitioner) filed a complaint with respondent New York State Division of Human Rights (hereinafter DHR) alleging that his employer, General Electric Company (hereinafter GE), had discriminated against him by terminating his employment as an engineer based on his age. Following a hearing, the Commissioner of Human Rights found that petitioner had been notified in October 1993, when he was 60 years of age and the oldest engineer in his unit of 24 engineers, that he would be laid off at the end of the year because his project at GE was being transferred to South Carolina. The Commissioner also found that, at about that same time, several younger engineers with the same job title and educational prerequisites, none of whom were over the age of 40, were assigned to petitioner's unit. Inasmuch as GE failed to support its claim that the younger engineers were better qualified than petitioner, the Commissioner concluded that GE had discriminated against him because of his age.

Regarding damages, however, the Commissioner found that, on December 20, 1993, while petitioner was still on the payroll, he suffered a heart attack, decided to retire and thereafter sought no further employment. In the absence of medical evidence that the notice of termination had caused or contributed to petitioner's heart attack, and given that he thereafter failed to mitigate his damages by seeking employment, the Commissioner awarded him damages only for the mental anguish he suffered from the time that he was told of the layoff until his retirement. Petitioner then commenced proceeding No. 1 to review the Commissioner's findings regarding damages, and GE commenced proceeding No. 2 challenging the Commissioner's other findings.

Beginning with proceeding No. 2, we reject GE's contention that petitioner's complaint to DHR was untimely. The Commissioner deemed petitioner's oral contact with DHR, during which

he stated his complaint well within one year of the alleged discriminatory practice (*see* Executive Law § 297 [5]), to be a timely complaint because a DHR employee erroneously advised him as to the time to file a written complaint and then scheduled him for his formal intake appointment beyond the one-year period. Since DHR acknowledged that the delay in formal filing was "due to [its] own failure to render effectual assistance to petitioner in the processing of his complaint" (*Matter of Stacey v McDaniel*, 54 AD2d 645, 646 [1976]; *see Matter of Farley v New York State Dept. of Civ. Serv.*, 142 AD2d 783, 784 [1988]), we find adequate support for the Commissioner's determination.

Next, we consider GE's argument that petitioner failed to prove that his termination was based on age discrimination. In doing so, our review of a DHR determination following a hearing is limited to consideration of whether substantial evidence supports it (*see Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326, 331 [2003]). We will "not weigh the evidence or reject [the Commissioner's] choice where the evidence is conflicting and room for a choice exists" (*Matter of CUNY-Hostos Community Coll. v State Human Rights Appeal Bd.*, 59 NY2d 69, 75 [1983]).

To establish a prima facie case of age discrimination, petitioner was required to show membership in a protected class, that he was qualified to hold his position and he was discharged under circumstances giving rise to an inference of discrimination (*see Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights, supra* at 330). Petitioner met this burden by showing that there was engineering work for which he was qualified and several younger engineers were assigned to his unit to perform such work just before and after his layoff notice. The burden then shifted to GE to show "legitimate, independent, and nondiscriminatory reasons to support its employment decision" (*Matter of Miller Brewing Co. v State Div. of Human Rights*, 66 NY2d 937, 938 [1985]).

Although GE offered facially legitimate reasons for its actions, the Commissioner found them to be pretextual. While the Commissioner allowed that GE's decision to transfer petitioner's work to South Carolina may have been made for a legitimate business reason, he rejected GE's reasons for not offering petitioner other work that was available within his unit. Noting that petitioner's work had been transferred out-of-state in 1991 and yet GE had found him other work and provided for on-the-job training then, the Commissioner rejected as incredible GE's reasons for denying him other work in 1993 and, instead, as-

signing younger engineers to his unit. Further, GE's failure to provide any documentation substantiating its claim that the younger engineers were better qualified and, unlike petitioner, would not require on-the-job training, supports the Commissioner's finding that GE's witnesses were not credible on this point, as well.

We also think that it is revealing that GE failed to use its established layoff procedure, which employs a matrix rating system to analyze its employees' relative worth in deciding how to make needed staff reductions (*cf. Arendt v General Elec. Co.*, 305 AD2d 762, 764 [2003], *lv denied* 100 NY2d 513 [2003]; *Hardy v General Elec. Co.*, 270 AD2d 700, 702 [2000], *lv denied* 95 NY2d 765 [2000]). Unlike *Arendt* or *Hardy*, the evidence here indicates that petitioner had good performance reviews and was an asset to GE. Further, the Commissioner observed that GE's claim, that the engineer who replaced petitioner had been offered employment in the spring of 1993, was contradicted by documentary evidence showing that a written offer was made only after petitioner had been selected to receive a layoff notice. Since we will "not substitute [our] judgment for that of the agency where conflicting evidence exists, because it is for the agency to pass upon the credibility of witnesses and to base its inferences on what it accepts as the truth" (*Matter of State Div. of Human Rights v Muia*, 176 AD2d 1142, 1143 [1991]), we see no basis to disturb the Commissioner's finding that GE unlawfully discriminated against petitioner.

Turning to proceeding No. 1, we are not persuaded by petitioner's contention that he is entitled to recover lost pay and damages for emotional injuries incurred after he retired. Although petitioner argues that his failure to mitigate his damages by seeking employment was due to his heart attack and subsequent panic attacks, the Commissioner found insufficient evidence in the record that they were caused by the stress of termination. It is well settled that "[a]n award of compensatory damages must be based on pecuniary loss and emotional injuries actually suffered as a result of discrimination" (*Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights*, 241 AD2d 811, 812 [1997], *lv denied* 92 NY2d 807 [1998]). Here, the Commissioner concluded that, due to petitioner's heart attack and retirement, he was in the same position that he would have been in had he not been terminated and, thus, he was not entitled to damages for lost employment. While petitioner and his wife testified that a doctor had said that the stress of the layoff likely contributed to the attack, his medical records do not reflect this and he failed to present any

medical evidence of such a causal connection. Rather, the records indicate that petitioner's heavy smoking, high cholesterol and coronary artery disease caused his heart attack. Nor did petitioner demonstrate that his termination made it impossible for him to obtain employment following retirement. Thus, the Commissioner's denial of an award for loss of employment is supported by the record. We also conclude that, in light of the testimony regarding the mental anguish and humiliation that petitioner suffered during the period between the notice of layoff and his retirement, the award of $15,000 was appropriate for GE's wrongdoing (*see Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights, supra* at 812).

Mercure, J.P., Peters, Carpinello and Kane, JJ., concur. Adjudged that the determination is confirmed, without costs, and petitions dismissed.