FOURTH DEPARTMENT, JUNE, 2008

(June 6, 2008)

■ In the Matter of NEW YORK STATE TUG HILL COMMISSION, Petitioner-Respondent, v NEW YORK STATE DIVISION OF HUMAN RIGHTS et al., Respondents-Petitioners. NEW YORK STATE DEPARTMENT OF AUDIT AND CONTROL, Necessary Party. [860 NYS2d 698]—

Proceeding pursuant to Executive Law § 298 (transferred to the Appellate Division of the Supreme Court in the Fourth Judicial Department by order of the Supreme Court, Jefferson County [Hugh A. Gilbert, J.], entered July 26, 2007) to review a determination of respondent-petitioner New York State Division of Human Rights. The determination found after a hearing that petitioner-respondent had unlawfully discriminated against respondent-petitioner Clark Waring Blackburn, Jr.

It is hereby ordered that the determination is modified on the law and the petition is granted in part by reducing the award of

compensatory damages for mental anguish and humiliation to $15,000 and as modified the determination is confirmed without costs, and the cross petitions are granted in part and petitioner-respondent is directed to pay respondent-petitioner Clark Waring Blackburn, Jr. the sum of $114,425 for back pay, together with interest at the rate of 9% per annum, commencing September 1, 2000, and the sum of $15,000 for mental anguish and humiliation, with interest at the rate of 9% per annum, commencing March 30, 2007.

Memorandum: Petitioner-respondent (petitioner) commenced this proceeding pursuant to Executive Law § 298 seeking review of the determination of the Commissioner of respondent-petitioner New York State Division of Human Rights (Commissioner) that petitioner had unlawfully discriminated against respondent-petitioner Clark Waring Blackburn, Jr. (complainant) based on his age, and awarding complainant back pay and compensatory damages for mental anguish and humiliation. We note at the outset that our review of that determination "is limited to consideration of whether substantial evidence supports the [Commissioner's] determination" (*Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326, 331 [2003]; *see generally 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 179-180 [1978]), and we "may not weigh the evidence or reject the Commissioner's determination 'where the evidence is conflicting and room for choice exists' " (*Matter of Manhattan & Bronx Surface Tr. Operating Auth. v New York State Exec. Dept.*, 220 AD2d 668, 668 [1995], quoting *Matter of State Div. of Human Rights [Granelle]*, 70 NY2d 100, 106 [1987]).

Contrary to petitioner's contention, we conclude that there is substantial evidence in the record to support the Commissioner's determination that the termination of complainant's employment was motivated by age discrimination and that the legitimate, nondiscriminatory explanation offered by petitioner, i.e., a reorganization, was pretextual (*see Matter of Bemis v New York State Div. of Human Rights*, 26 AD3d 609, 611-612 [2006]; *Exxon Shipping Co. v New York State Div. of Human Rights*, 303 AD2d 241 [2003], *lv denied* 100 NY2d 505 [2003]). In support of the determination, the Commissioner relied, inter alia, upon evidence that complainant, petitioner's oldest employee, was not offered an opportunity previously offered to a younger employee to remain employed at a lower pay grade; new younger employees were hired and existing younger employees were promoted with raises within months of complainant's termination; and petitioner operated with more supervisory positions

after the termination of complainant, a supervisory employee, than before his termination. "It is peculiarly within the domain of the Commissioner, who is presumed to have special expertise in the matter, to assess whether the facts and the law support a finding of unlawful discrimination" (*Matter of Club Swamp Annex v White*, 167 AD2d 400, 401 [1990], *lv denied* 77 NY2d 809 [1991]). That finding, moreover, need not be based upon proof that age was the only factor in the complainant's termination or that the explanation offered by petitioner was false. Rather, the finding must be based upon proof establishing that petitioner's "stated reason was not the only reason and that [complainant's] age did make a difference" (*Montana v First Fed. Sav. & Loan Assn. of Rochester*, 869 F2d 100, 105 [1989]; *see Matter of Miller Brewing Co. v State Div. of Human Rights*, 166 AD2d 705, 706 [1990], *lv denied* 77 NY2d 805 [1991]). Here, the Commissioner's determination that the age of complainant played a role in petitioner's decision to terminate him is supported by substantial evidence, and thus "the judicial function is exhausted" (*Manhattan & Bronx Surface Tr. Operating Auth.*, 220 AD2d at 668).

We also reject petitioner's contention that the Commissioner failed to make appropriate deductions or offsets from the back pay award of pension benefits received by complainant following his termination. Those benefits were earned by complainant based on his prior employment with the State of New York and were provided to him through the state retirement system. Thus, petitioner has not been required to pay complainant twice for the same time period, i.e., for both pension benefits and back pay (*cf. Talada v International Serv. Sys., Inc.*, 899 F Supp 936, 960 [1995]; *Meschino v International Tel. & Tel. Corp.*, 661 F Supp 254, 257 [1987]). In addition, complainant submitted evidence that the unlawful termination of his employment by petitioner resulted in a reduction of complainant's length of service in the state retirement system and a loss of pension benefits. Thus, contrary to petitioner's contention, the failure to deduct from the back pay award the pension payments received by complainant does not result in a windfall for complainant (*cf. Munnelly v Memorial Sloan Kettering Cancer Ctr.*, 741 F Supp 60, 62 [1990]).

We agree with petitioner, however, that the award of $25,000 in compensatory damages for mental anguish and humiliation is not supported by the evidence (*see generally Matter of Anagnostakos v New York State Div. of Human Rights*, 46 AD3d 992, 994 [2007]; *Matter of State of New York v New York State Div. of Human Rights*, 284 AD2d 882, 883-884 [2001]), and we conclude

that the maximum award supported by the evidence is $15,000. We therefore modify the determination accordingly.

All concur except Scudder, P.J., and Lunn, J., who dissent and vote to annul the determination in accordance with the following memorandum.

Scudder, P.J., and Lunn, J. (dissenting). We respectfully dissent, because we cannot agree with the majority that there is substantial evidence in the record to support the determination of the Commissioner of respondent-petitioner New York State Division of Human Rights (Commissioner) that age played a role in the decision of petitioner-respondent (petitioner) to terminate the employment of respondent-petitioner Clark Waring Blackburn, Jr. (complainant) (*see generally Rainer N. Mittl, Ophthalmologist, P.C. v New York State Div. of Human Rights*, 100 NY2d 326, 331 [2003]; *300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 179-180 [1978]). The record establishes that complainant was one of two individuals employed by petitioner, an agency funded by New York State, at a grade M1 managerial position. Only one other employee, petitioner's executive director, was employed at a higher grade, i.e., an M4 position. In 1992, after the executive director announced his retirement, and at a time when the state was experiencing fiscal problems and there were rumors of layoffs, several of petitioner's nonmanagerial employees proposed a restructuring plan to petitioner's board of directors (Board) that would cut costs by eliminating positions and job duties performed by petitioner, and by redistributing managerial responsibilities to more employees at lower pay grades. That redistribution would also serve as an incentive for promotion among the nonmanagerial positions. The driving force behind the proposal was a grade 23 employee who was competing with complainant for promotion to the M4 position about to become vacant. That grade 23 employee, as well as the other nonmanagerial employees, believed that petitioner had more upper level management positions than it needed or could afford, that complainant spent his time on projects that were unimportant to petitioner's mission, and that complainant was not an effective manager. Thus, the proposal that the nonmanagerial employees presented to the Board eliminated one of the two M1 managerial positions and the executive secretary's position, and it also eliminated the grade 23 position held by complainant's competitor for the M4 position on the assumption that the grade 23 employee would be appointed to the M4 position. In addition, the proposal downgraded one grade 18 position to a grade 14 position and downgraded the M4 position to the entry level sal-

ary for that position, and it included a suggestion that the prioritization of petitioner's job duties be revised. Complainant and the second M1 employee presented an alternative proposal to the Board suggesting that the employees should discuss ways to cut expenses and to cultivate outside sources of funding rather than eliminating positions or job duties.

The Board rejected the proposal of complainant and the other M1 employee and instead agreed with the restructuring plan proposed by the nonmanagerial level employees. Complainant's competitor thus was appointed to the M4 position, and petitioner's job duties were reviewed and reprioritized. Over half of the projects on which complainant was working, those involving projects outside the Tug Hill Plateau region, were assigned a low priority. The projects on which the second M1 employee was working, those involving environmental issues in the Tug Hill Plateau region, were given a high priority. The newly appointed M4 employee then implemented the restructuring plan by eliminating complainant's position, the position of the executive secretary and his own former position, as proposed, and none of those positions was ever reinstated or filled.

In our view, there is substantial evidence in the record establishing that, while complainant was purposefully targeted for termination from the outset of petitioner's fiscal problems, the termination was not motivated by age discrimination. Rather, the termination resulted from his rivalry with his competitor for promotion to the M4 position, the generally held opinion by the nonmanagerial employees that complainant wasted time and resources on the wrong projects, and the steps taken by the nonmanagerial employees to protect their own jobs by convincing the Board that any job cuts should be from managerial positions only.

In support of its agreement with the determination of the Commissioner that complainant's termination was age related, the majority notes that the Commissioner relied, inter alia, upon evidence that complainant was not offered a lower paying job, that new younger employees were hired and existing younger employees were promoted after his termination, and that there were more supervisory positions after the reorganization. We conclude, however, that the evidence upon which the Commissioner relied was merely evidence of actions taken to implement the proposal of the nonmanagerial employees, which was accepted by the Board, to lower petitioner's operating costs, to eliminate projects that complainant's competitor believed were unnecessary, to assume control of petitioner, and to terminate complainant's employment. For example, although complainant

interprets petitioner's failure to offer him a lower paying position as age discrimination, complainant himself testified that the Board rejected downgrades as a solution to petitioner's fiscal problems because of the negative effect of downgrades on morale.

The record further establishes that, although younger employees were hired, some of those employees were hired to work in petitioner's environmental sector, which had been given a high priority pursuant to the proposal accepted by the Board. In addition, the new employees were hired at a grade 14 position only, a salary level commensurate with less experienced workers, and the promotions of the existing younger employees were motivated in part to fill vacancies of employees who had voluntarily left petitioner's employment and in part to redistribute work formerly performed by complainant and the executive secretary who had been terminated, so as to spread managerial tasks more evenly. Significantly, none of the employees upgraded was promoted to any of the eliminated positions. Although there were more individuals performing managerial duties and more upgrades after the reorganization, those managerial duties were accomplished at less cost to petitioner. Thus, before the reorganization there was one M4 position, two M1 positions and two grade 23 positions, and after the reorganization there was one entry level M4 position, one M1 position and three grade 23 positions. Complainant himself testified that petitioner could be effectively administered by only two managerial level positions, either by one M4 position and one M1 position, or by two M1 positions. Another employee testified that, after the reorganization and the elimination of complainant's former job duties, petitioner in fact operated in a more productive manner.

Upon reviewing the record in its entirety, rather than merely reviewing the testimony of complainant concerning his interpretation of the reason for his termination, we conclude that the evidence is not "of such quality and quantity as to generate conviction in and persuade a fair and detached fact finder" that the termination of complainant was even partially motivated by his age (*300 Gramatan Ave. Assoc.*, 45 NY2d at 181; *see also Matter of Consolidated Edison Co. of N.Y. v New York State Div. of Human Rights*, 77 NY2d 411, 417 [1991], *rearg denied* 78 NY2d 909 [1991]). Rather, examining the record as a whole, we conclude that the evidence is of such quality and quantity as to compel the conclusion that complainant was terminated for many interwoven reasons, none of which included his age. He was terminated because of the need of petitioner to reduce its budget, because of the Board's decision to restructure the job

duties of petitioner to concentrate on issues only within the Tug Hill Plateau region, because of the belief held by both the nonmanagerial employees and the Board that complainant's position was the most expendable, because of the nonmanagerial employees' disagreement with complainant's managerial style, and because complainant was unsuccessful in his rivalry with a fellow employee for petitioner's executive directorship position. We therefore would annul the Commissioner's determination, grant the petition and dismiss the cross petitions of respondents-petitioners for enforcement. Present—Scudder, P.J., Hurlbutt, Lunn, Green and Gorski, JJ.