■ In the Matter of GRAND UNION COMPANY, Petitioner, v EDWARD MERCADO, as Commissioner of the New York State Division of Human Rights, et al., Respondents. [694 NYS2d 524] —Graffeo, J. Proceeding pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent State Division of Human Rights which found petitioner guilty of an unlawful discriminatory practice based on gender and age.

Respondent Martha Mailloux (hereinafter respondent), born on April 25, 1932, filed a charge of age and gender discrimination against petitioner, her employer, with the State Division of Human Rights (hereinafter DHR) in May 1991. Respondent had been working for petitioner as a frozen food selector since 1979. In 1989, two co-workers, Wally Simmons and David Briggs, began verbally and physically harassing respondent, the only female employee in the frozen food warehouse. The harassment culminated with respondent sustaining injuries as a result of an October 2, 1990 incident in which Simmons lifted respondent by the legs, turned her upside down over his shoulder and attempted to place her head first into a garbage receptacle. He then carried her down the aisle and slammed her body into the door to the men's room. Respondent eventually ceased working on October 15, 1990, claiming she was unable to perform her work duties due to her injuries.

At the conclusion of hearings held in December 1997 and March 1998 in connection with her discrimination charges, the Administrative Law Judge issued a determination finding that petitioner had engaged in discriminatory conduct. DHR adopted these findings and ordered petitioner to pay respondent back pay in the amount of $92,665.06, from the time respondent discontinued working until her retirement on May 1, 1994,* in addition to $20,000 for mental anguish and humiliation. Petitioner commenced this CPLR article 78 proceeding

---

* The amount awarded to respondent represented the total amount due for back wages plus fringe benefits, minus the amount she received in workers' compensation benefits over the same time period.

seeking judicial review of DHR's final order, and the matter was transferred to this Court pursuant to Executive Law § 298 and 22 NYCRR 800.20 (b).

An employer may be held accountable for an employee's discriminatory acts where "the employer became a party to it by encouraging, condoning or approving it" (*Matter of Totem Taxi v State Human Rights Appeal Bd.*, 65 NY2d 300, 305). The acquiescence or failure to take appropriate action in response to an awareness of discriminatory conduct may constitute condonation on behalf of the employer (*see, Matter of State Div. of Human Rights v St. Elizabeth's Hosp.*, 66 NY2d 684, 687; *New York City Health & Hosps. Corp. v New York State Div. of Human Rights*, 236 AD2d 310, 310-311). Here, petitioner does not dispute that respondent was subjected to age and gender harassment in the workplace but argues that it took prompt and appropriate remedial action reasonably calculated to put an end to the harassment. Hence, our inquiry is limited to the determination of whether substantial evidence was introduced at the hearing to support a finding of condonation on petitioner's part (*see, Matter of Consolidated Edison Co. v New York State Div. of Human Rights*, 77 NY2d 411, 417).

Respondent testified that she reported to her supervisor, Mickey Thomas, that Simmons taunted and harassed her with objectionable comments such as remarking that she was taking a man's job away and that she was too old and slow. She also stated that Briggs made similar derogatory comments to her, including "she's the biggest whore here in Grand Union". Thomas relayed these reports to the general manager of the warehouse, Curt Taylor, who informed respondent that he would talk to Simmons and Briggs concerning their behavior. Briggs and Simmons nevertheless continued to regularly harass respondent about her gender and age. Respondent further complained to Thomas regarding physical acts by both men, such as taking her machine away or knocking her over. Thomas again indicated to respondent that he would speak with Briggs and Simmons and assured her the two co-workers would not bother her again.

Although Thomas testified that he warned Simmons that he would be fired if he had any inappropriate contact with respondent, Simmons did not refrain from engaging in such conduct, as evidenced by the injuries sustained by respondent in October 1990. The October incident was reported by respondent and as a result, Simmons was suspended for three days, despite being previously warned by Taylor that any further incidents would result in his dismissal. When respondent expressed her dis-

pleasure over Simmons being suspended for only three days, Taylor replied that had he been aware of the problems, Simmons would have been fired. Respondent further testified that an acting supervisor stated that if she went to the police, her job would be in jeopardy. Even after the suspension and prior to respondent's departure from her job, Simmons continued to taunt respondent, and Thomas, once again, told respondent that he would talk to Simmons.

Four male warehouse co-workers testified on behalf of respondent, all revealing that they heard disparaging remarks regarding age and gender being made by Simmons and Briggs toward respondent. Two employees related that on more than one occasion, they witnessed physical harassment. One co-worker even reported Simmons' harassment of respondent to Thomas on several occasions.

We find the record in this case clearly portrays a job site infected with increasingly aggressive acts of verbal and physical discrimination and an employer, aware of numerous complaints, that failed to take appropriate measures to halt such conduct. Hence, substantial, if not overwhelming, evidence exists to support DHR's determination that petitioner's inaction and inability to thwart the verbal and physical harassment regarding respondent's gender and age by two of its employees constituted a condonation of their employees' actions and a failure to remediate a hostile work environment (*see, Matter of Capabilities, Inc. v State Div. of Human Rights*, 148 AD2d 861, *lv denied* 75 NY2d 708; *see also, New York City Health & Hosps. Corp. v New York State Div. of Human Rights, supra*).

Next, although petitioner concedes that the exclusivity provisions of the Workers' Compensation Law do not bar an action under the New York Human Rights Law, petitioner argues that respondent's election to receive workers' compensation benefits precluded the discrimination proceeding. We disagree. Respondent's monetary recovery for the intentional acts of discrimination in the DHR proceeding was offset by the amount of workers' compensation benefits she was paid. Workers' Compensation Law § 29, which was designed to prevent the receipt of double recovery (*see, Matter of Raponi v Orange & Rockland Utils.*, 221 AD2d 786, 787), was not frustrated in this case and, therefore, respondent was not barred from receiving lost wages pursuant to DHR's determination.

Peters, J. P., Spain and Carpinello, JJ., concur. Adjudged that the determination is confirmed, with costs to respondent Martha Mailloux, and petition dismissed.