■ In the Matter of NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES, Petitioner, v NEW YORK STATE DIVISION OF HUMAN RIGHTS, on the Complaint of ALICIA S. HUMIG, Respondent. [861 NYS2d 494]—

Rose, J. Proceeding pursuant to Executive Law § 298 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which found petitioner guilty of an unlawful discriminatory practice based on sexual orientation and gender.

In March 2003, Alicia S. Humig, the only female correction officer on her cell block at petitioner's Wende Correctional Facility, filed a complaint with respondent alleging that petitioner subjected her to a hostile work environment and discrimination based upon her gender and sexual orientation as the result of correction officer Jay Wright's obscene language and offensive conduct. Humig charged that petitioner had ignored her complaints about Wright's conduct, had taken no steps to discipline him and had retaliated against her. Following a hearing

and recommendations by an Administrative Law Judge, respondent sustained the complaint and awarded compensatory damages in the amount of $850,000. Petitioner seeks to nullify this determination.

We reject petitioner's contention that respondent lacked jurisdiction to entertain Humig's complaint. Although Executive Law § 296 did not prohibit sexual discrimination based on sexual orientation until January 16, 2003 (*see* L 2002, ch 2), and the amendment applies prospectively only (*see Wilder v Newman*, 167 Fed Appx 828 [2006]; *Logan v Salvation Army*, 10 Misc 3d 756, 759-760 [2005]), the discriminatory conduct proven at the hearing was based upon Humig's gender as well as her sexual orientation, and it continued until July 2003, well after the amendment's effective date (*see generally Matter of Binghamton GHS Empls. Fed. Credit Union v State Div. of Human Rights*, 77 NY2d 12, 17 [1990]; *Matter of Board of Higher Educ. of City of N.Y. v Carter*, 14 NY2d 138, 145 [1964]).

In reviewing respondent's findings that petitioner subjected Humig to a hostile work environment due to her gender and her sexual orientation during the time period, we are limited to determining whether those findings are supported by substantial evidence (*see 300 Gramatan Ave. Assoc. v State Div. of Human Rights*, 45 NY2d 176, 181 [1978]), and we will "not weigh the evidence or reject [respondent's] determination 'where the evidence is conflicting and room for choice exists' " (*Matter of Manhattan & Bronx Surface Tr. Operating Auth. v New York State Exec. Dept.*, 220 AD2d 668, 668 [1995], quoting *City of New York v State Div. of Human Rights*, 70 NY2d 100, 106 [1987]; *see* Executive Law § 298). A hostile work environment is one in which " 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment' " (*Forrest v Jewish Guild for the Blind*, 3 NY3d 295, 310 [2004], quoting *Harris v Forklift Systems, Inc.*, 510 US 17, 21 [1993]; *see Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights*, 28 AD3d 906, 906-907 [2006]).

Here, respondent credited the testimony of Humig and other officers at her facility that Wright, who, while holding the same rank as Humig, was effectively her superior in running the cell block where she worked and had referred to Humig in obscene and sexually demeaning terms in the presence of other correction officers and inmates on numerous occasions over a period of about one year. The evidence also established that Wright frequently encouraged her to "bid out" to obtain a position

elsewhere, was responsible for offensive writings and sexually explicit graffiti prominently displayed in her workplace, and filed a baseless complaint against her. Wright's comments were shown to be persistent and relentless, and despite Humig's numerous written and verbal complaints to her superiors, the discriminatory behavior was not curtailed until Wright himself left for another position within the facility. The proof established that petitioner, through its supervisory personnel, failed to properly process Humig's complaints while promptly processing Wright's complaint against her despite their acknowledgment that they had known his complaint was "bogus." Petitioner also subjected Humig to an investigation by the Inspector General and her locker to a search, resulting in confiscation of her property. The record further shows that Humig's superiors were aware of the harassment and her complaints, but did nothing about them and, thereby, condoned Wright's conduct (*see Matter of State Div. of Human Rights v St. Elizabeth's Hosp.*, 66 NY2d 684, 687 [1985]; *Matter of Grand Union Co. v Mercado*, 263 AD2d 923, 924-925 [1999]). Given the nature of the discriminatory conduct, as well as the testimony of Humig and her witnesses, respondent's finding that a hostile work environment existed and was ignored by her superiors in violation of departmental policies is amply supported by the record (*see Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights*, 28 AD3d at 907; *Matter of Grand Union Co. v Mercado*, 263 AD2d at 925).

We also agree with respondent's finding of retaliation. To establish a prima facie case of retaliation, Humig was required to show that (1) she was engaged in a protected activity, (2) petitioner was aware of that activity, (3) she suffered an adverse employment action and (4) there was a causal connection between her protected activity and the adverse employment action (*see Forrest v Jewish Guild for the Blind*, 3 NY3d at 312-313; *Matter of Board of Educ. of New Paltz Cent. School Dist. v Donaldson*, 41 AD3d 1138, 1140 [2007], *lv denied* 10 NY3d 706 [2008]). This burden was satisfied through evidence that Humig had made numerous oral and written complaints of which petitioner was aware and that after these complaints were made, Humig's superiors singled out her locker for search, disposed of her personal property from her locker and from a common area in her workplace, and initiated a formal investigation against her based upon a complaint that they now claim they knew to be baseless, while refusing to properly process her own complaints (*see Dortz v City of New York*, 904 F Supp 127, 156 [SD NY 1995). The record also confirms that petitioner failed to present "a legitimate, independent and nondiscriminatory rea-

son" for its conduct (*Pace v Ogden Servs. Corp.*, 257 AD2d 101, 105 [1999]; *see Matter of Board of Educ. of New Paltz Cent. School Dist. v Donaldson*, 41 AD3d at 1141-1142). Accordingly, we find no basis to disturb respondent's finding that petitioner unlawfully retaliated against Humig.

We cannot agree, however, that the award of $850,000 for Humig's emotional distress is reasonably related to the wrongdoing, supported by the record and comparable to other awards for similar injuries (*see Matter of New York City Tr. Auth. v State Div. of Human Rights*, 78 NY2d 207, 219 [1991]). It is well settled that "an award of compensatory damages must be based upon pecuniary loss and emotional injuries actually suffered" as a result of discrimination, and "[c]are must be taken to insure that the award is . . . not punitive" (*Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights*, 225 AD2d 856, 858, 859 [1996]; *see Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights*, 241 AD2d 811, 812 [1997], *lv denied* 92 NY2d 807 [1998]; *Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights*, 215 AD2d 908, 910 [1995]).

Humig and her witnesses testified that, as a result of the discriminatory actions by Wright, she suffered from increased stress, sleeping and eating difficulties, nosebleeds, and that she was physically, mentally and emotionally upset and needed counseling for what her counselor diagnosed as "adjustment disorder with depressive features." Notably, however, Humig attended only four counseling sessions, and she does not claim that she took any leave or was prescribed any medication due to the resulting distress. She testified that Wright's actions caused her to fear for her life and she believed that other correction officers might not come to her aid if a dangerous situation developed. While respondent cites cases where awards in the amount of $400,000 or more have been sustained (*see Matter of Kondracke v Blue*, 277 AD2d 953 [2000] [$400,000]; *Matter of Town of Hempstead v State Div. of Human Rights*, 233 AD2d 451 [1996], *appeal dismissed* 89 NY2d 1029 [1997], *lv denied* 90 NY2d 807 [1997] [$200,000-$500,000]; *Matter of New York City Tr. Auth. v State Div. of Human Rights*, 181 AD2d 891 [1992], *lv denied* 80 NY2d 762 [1992] [$450,000]), we find that those cases involved far more pervasive discrimination and injuries that were far more severe than in the present case. Accordingly, after reviewing awards in cases of comparable emotional distress caused by discrimination and sexual harassment, we find that the award here of $850,000 is excessive and should be reduced to $200,000 (*see e.g. Matter of Anagnostakos v New York State*

*Div. of Human Rights*, 46 AD3d 992 [2007]; *Matter of Board of Educ. of New Paltz Cent. School Dist. v Donaldson, supra; Matter of Bell v New York State Div. of Human Rights*, 36 AD3d 1129 [2007]; *Matter of R & B Autobody & Radiator, Inc. v New York State Div. of Human Rights*, 31 AD3d 989 [2006]; *Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights, supra*).

We have considered petitioner's remaining arguments and find them to be without merit.

Cardona, P.J., Peters, Carpinello and Malone Jr., JJ., concur. Adjudged that the determination is modified, without costs, by reducing the amount awarded from $850,000 to $200,000, and, as so modified, confirmed.