[928 NYS2d 333]

In the Matter of JOHN MURPHY, Petitioner/Cross-Respondent, v GALEN D. KIRKLAND et al., Respondents, and STATE DIVISION OF HUMAN RIGHTS, Respondent/Cross-Petitioner.

Second Department, August 16, 2011

## APPEARANCES OF COUNSEL

*Franklin, Gringer & Cohen, P.C.*, Garden City (*Joshua Marcus* of counsel), for petitioner/cross-respondent.

*Caroline J. Downey*, Bronx (*Michael K. Swirsky* of counsel), for respondent/cross-petitioner.

## OPINION OF THE COURT

BALKIN, J.

The primary issue before us is whether, in this administrative proceeding brought under the Human Rights Law (Executive Law art 15), the New York State Division of Human Rights (hereinafter the Division) abused its discretion in amending the administrative complaint (hereinafter the complaint) by adding another respondent after the one-year limitations period set forth in Executive Law § 297 (5) had expired, and after the respondent had already appeared pro se on behalf of his company, the sole respondent in the original complaint, at a public hearing on the complaint (*see* Executive Law § 297 [4] [a]). Specifically, the Division amended the complaint—which originally alleged sexual harassment and retaliatory termination by a sole respondent, Alliance Mortgage Banking Corp. (hereinafter Alliance)—by adding another respondent, John Murphy, Alliance's president and sole shareholder. This amendment was made after the one-year limitations period (*see* Executive Law § 297 [5])

had expired and Murphy had already appeared pro se on behalf of Alliance at the public hearing on the complaint.

In August 2006 Takiya Fitzgerald filed the complaint with the Division, alleging that she had been sexually harassed by her supervisor, Keith Bailey, while they were employed by Alliance, and that she had been fired in retaliation for complaining about the harassment. Only Alliance was named as a respondent. Following an investigation, the Division determined that a public hearing was warranted. Shortly before the hearing commenced, Alliance discharged its counsel and proceeded pro se, through Murphy. According to Murphy, the corporation was going out of business and was in the process of winding down its affairs.

The matter came before an administrative law judge (hereinafter the ALJ) on November 19, 2007. At the commencement of the hearing, the Division moved to add Bailey as a party respondent, and the ALJ reserved decision.

Fitzgerald testified that, during her employment interview with Bailey, the manager of Alliance's collections department, Bailey told her that he was attracted to her and "was willing to give [her] a try" despite her lack of experience in the mortgage industry. Fitzgerald was hired, and she began working for Alliance on December 9, 2005, as a collections customer service representative. Fitzgerald further testified that, beginning that month, and continuing throughout her employment, Bailey made inappropriate comments and touched her inappropriately. As recounted by Fitzgerald, on Friday, June 2, 2006, Fitzgerald sent an e-mail to Alliance's human resources manager, Ellen Spaventa, and asked to meet with her for the purpose of discussing Bailey's behavior. Fitzgerald explained that, at the meeting, which took place on that day, Fitzgerald detailed the inappropriate comments and conduct. According to Fitzgerald, Spaventa said that she would speak to Bailey and set up a meeting with Fitzgerald, Spaventa, and Bailey to resolve the issue. That same day, at 4:55 P.M., Bailey called Fitzgerald into the conference room and terminated her employment.

Fitzgerald testified that she knew Murphy while she was employed by Alliance, but was not aware of any "active role" he had in her employment. After Fitzgerald completed her testimony, the Division rested.

At the end of the day's proceedings, the ALJ denied the Division's application to add Bailey as a respondent, "given the fact that a lot of time has passed, the statute of limitations is-

sues that . . . may relate to that [*sic*]." Notable as well, the ALJ stated: "this is something that should have been brought up much earlier in these proceedings and I don't wish it to delay the speedy resolution."

The next day, Alliance presented its case. Spaventa testified, and disputed key portions of Fitzgerald's testimony. Among other things, she testified that Fitzgerald's probationary period had been extended in April 2006, and that Bailey had told Spaventa earlier in the week during which Fitzgerald was terminated that Fitzgerald should be terminated because of poor work performance. According to Spaventa, terminations took place only on Fridays; after Fitzgerald made her complaint that Friday, the decision was made to go forward with the termination that day. As Spaventa recalled, both Bailey and Murphy were aware of the complaint, and Spaventa investigated it by speaking with two other employees. Spaventa explained that Murphy approved the termination. Spaventa also testified that Alliance was going out of business and that, at the time she testified, she was the only employee remaining on the payroll.

Fitzgerald offered rebuttal testimony in which she acknowledged that her probation had been extended in April 2006.

On January 25, 2008, after the hearing, the ALJ forwarded to the parties his proposed order. In it, the ALJ recommended a finding that Alliance had discriminated against Fitzgerald on the basis of sex because it condoned the sexual harassment she experienced, that Alliance had retaliated against Fitzgerald by terminating her employment, and that Fitzgerald was entitled to back pay and damages for mental anguish.

Both parties promptly filed objections. The Division's Prosecutions Unit requested to reopen the hearing and to add Bailey and Murphy as respondents. In particular, the Prosecutions Unit argued that Murphy, "as Alliance's president, played an active role in Ms. Fitzgerald's termination, ratifying his subordinate's decision to dismiss the Complainant," and that "Bailey should . . . be added as an aider and abettor." Murphy objected to being added as a respondent given the passage of time and the lack of notice that he would be named.

On February 25, 2008, on behalf of the Commissioner of the Division (hereinafter the Commissioner), Adjudications Counsel amended the case caption to include Murphy (but not Bailey) individually as a respondent. Additionally, the matter was returned to the Division's Hearings Unit to reopen the record to allow Murphy to defend against the complaint.

Murphy, now represented by counsel, testified at the reopened hearing before the same ALJ who had conducted the initial hearing. Following the hearing, that ALJ recommended in his "Recommended Findings of Fact, Opinion and Decision, and Order," dated November 24, 2008, that both Alliance and Murphy be held liable for discrimination and retaliatory discharge, and that Fitzgerald be awarded the principal sums of $26,527 in damages for back pay and $25,000 in compensatory damages for mental anguish and humiliation during her employment and after her termination. On July 3, 2009, the Commissioner adopted the ALJ's recommendations in full and issued his final order.

Murphy, but not Alliance, commenced this proceeding under Executive Law § 298 in the Supreme Court, Nassau County, to vacate and annul the July 3, 2009 determination, and the Division cross-petitioned to enforce it. The proceeding and cross proceeding were transferred to this Court (*see* Executive Law § 298). Murphy contends that the statute of limitations had already passed when he was added as a respondent; that his addition as a respondent, after he appeared pro se on behalf of his company at the hearing, violated his due process rights; that no basis exists in the record for a finding that he condoned any discrimination suffered by Fitzgerald or was involved in a retaliatory discharge; and that the back pay award is excessive.

The Human Rights Law (Executive Law art 15) provides that persons aggrieved by certain forms of unlawful discrimination (*see* Executive Law §§ 296, 296-a, 296-b) may seek redress in an administrative proceeding or in a court action. Executive Law § 297 (5) requires that a complainant seeking redress through an administrative proceeding must file a complaint "within one year after the alleged unlawful discriminatory practice" (*see also* 9 NYCRR 465.3 [e]). The statute directs the Division to take certain steps upon the filing of a complaint. The Division "shall promptly" serve the respondent and any necessary party with copies of the complaint and make a "prompt investigation" (Executive Law § 297 [2] [a]; *see* Executive Law § 292 [16]; 9 NYCRR 465.3 [g]). It "shall" also, within 180 days after the complaint has been filed, determine if it has jurisdiction and, if so, whether there is "probable cause to believe that the person named in the complaint, hereinafter referred to as the respondent, has engaged or is engaging in an unlawful discriminatory practice" (*id.*). If the Division determines that there is probable cause, it "shall," within 270 days after the complaint has been filed, issue a written notice to the respondent requir-

ing an answer to the complaint, as it may have been amended, and an appearance at a public hearing within between 5 and 15 days after service of the notice (Executive Law § 297 [4] [a]). Then, within 180 days after commencement of the hearing, the Division "shall" make a determination and serve an order (Executive Law § 297 [4] [c]). The statute also gives the Division broad remedial and punitive powers to effectuate the purposes of the Human Rights Law (see Executive Law § 290 [3]; § 297 [4] [c]; Matter of Freudenthal v County of Nassau, 99 NY2d 285, 289-291 [2003]).

█ The provision that a complaint "must" be filed within one year after the discriminatory practice has occurred (Executive Law § 297 [5]) is in the nature of a statute of limitations and, thus, is mandatory (see Matter of Freudenthal v County of Nassau, 99 NY2d at 291; Marine Midland Bank v New York State Div. of Human Rights, 75 NY2d 240, 246 [1989]; Matter of Board of Educ. of Farmingdale Union Free School Dist. v New York State Div. of Human Rights, 56 NY2d 257, 261 [1982]; Matter of Ambrosio v State Div. of Human Rights, 144 AD2d 662, 663 [1988]; Matter of State Div. of Human Rights v Board of Educ. of Plainview-Old Bethpage Cent. School Dist., 112 AD2d 435, 437 [1985]; State Div. of Human Rights v Westmoreland Cent. School Dist., 56 AD2d 205, 207-208 [1977]; Matter of 121-129 Broadway Realty v New York State Div. of Human Rights, 43 AD2d 754, 755 [1973]; cf. Mendoza v State Div. of Human Rights, 74 AD2d 508, 509 [1980]). In contrast to the one-year statute of limitations for the filing of the complaint, "service" of the complaint on a respondent or any necessary party need only be effected "promptly" (Executive Law § 297 [2] [a]; see Matter of Ambrosio v State Div. of Human Rights, 144 AD2d at 663), and the statute's specific time provisions with respect to the Division's obligations to determine jurisdiction and probable cause, to issue notice to a respondent to answer the complaint and appear for a hearing, and to determine the issues and issue an order (see Executive Law § 297 [2] [a]; [4] [a], [c]), have been held to be merely "directory," rather than mandatory (Union Free School Dist. No. 6 of Towns of Islip & Smithtown v New York State Human Rights Appeal Bd., 35 NY2d 371, 380 [1974]; Matter of Ambrosio v State Div. of Human Rights, 144 AD2d at 662; Matter of Tessey Plastics Corp. v State Div. of Human Rights, 62 AD2d 36, 40 [1978], affd 47 NY2d 789 [1979]; Matter of Liverpool Cent. School Dist. v State Div. of Human Rights, 46 AD2d 1004, 1005 [1974]; Matter of

*121-129 Broadway Realty v New York State Div. of Human Rights*, 43 AD2d at 754; *Matter of Moskal v State of N.Y., Executive Dept., Div. of Human Rights*, 36 AD2d 46, 49 [1971]).

The Human Rights Law also authorizes, with certain restrictions, amendments of complaints: "The division or the complainant shall have the power reasonably and fairly to amend any complaint" (Executive Law § 297 [4] [a]). The Division has adopted regulations (*see* Executive Law § 295), with respect to amendments; as relevant here:

> "(a) *Power to amend*. The division or the complainant shall have the power reasonably and fairly to amend the complaint. No party may be removed by any amendment. After a hearing is commenced before an administrative law judge, any amendment is subject to the discretion of the administrative law judge.

> "(b) *Complainant's power*. The complainant has the right to amend the complaint in a reasonable manner before the commencement of a hearing.

> "(c) *Division's power*. The regional director, division attorney, or administrative law judge may reasonably amend the complaint" (9 NYCRR 465.4).

The Human Rights Law does not go beyond the term "reasonably and fairly" in delineating the discretionary determination of whether an amendment is permissible but, in most instances, the lack of a more specific provision will not prove problematic. When, however, the complainant or the Division seeks to amend the complaint to add a respondent after the statute of limitations has run, the analysis is more complicated, and a more structured approach is desirable to promote predictability and, thus, fairness. Although we have held in one case that a union local was "promptly" served when it was deemed to be a "necessary party" two years after the limitations period had expired (*see Matter of Ambrosio v State Div. of Human Rights*, 144 AD2d at 663), we have not previously considered whether amending a complaint to add a respondent after expiration of the one-year statute of limitations is proper.[1] This proceeding directly presents that issue.

---

**1.** The differences between a "necessary party" and a "respondent," and also between "promptly served" and amendment of a complaint after the statute of limitations has expired, are significant. Only a "respondent" is directly subject to the full panoply of remedies in the statute, including monetary

In actions governed by the CPLR, CPLR 203 (b) and (c) provide that a claim interposed against one defendant is also interposed against a defendant "united in interest" with that defendant. Thus, even when a defendant has not been named in, or served with, a complaint in an action within the statute of limitations, an amendment of the complaint to name that additional defendant may "relate back" to the interposition of the claim against the original codefendant, thus making the complaint timely against the later-added defendant. The Appellate Division, First Department, has applied a relation-back analysis in approving an amendment of a complaint in an administrative proceeding under the Human Rights Law (*see Rio Mar Rest. v New York State Div. of Human Rights*, 270 AD2d 47, 48 [2000]), and we have applied a relation-back analysis when defendants have been added in civil actions brought under the Human Rights Law (*see Leszczynski v Kelly & McGlynn*, 281 AD2d 519, 520-521 [2001]; *Schutz v Finkelstein Bruckman Wohl Most & Rothman*, 232 AD2d 470 [1996]).

As the relation-back doctrine has developed, the party seeking the benefit of it must first establish that

> "(1) both claims arose out of the same conduct, transaction, or occurrence, (2) the new party is united in interest with the original defendant, and by reason of that relationship, can be charged with notice of the institution of the action and will not be prejudiced in maintaining his or her defense on the merits by virtue of the delayed, and otherwise stale, assertion of those claims against him or her, and (3) the new party knew or should have known that, but for a mistake by the plaintiff as to the identity of

damages (Executive Law § 297 [4] [c]). By contrast, a "necessary party" is defined in Executive Law § 292 (16) merely as "any person who has such an interest in the subject matter of a proceeding under this article, or whose rights are so involved, that no complete and effective disposition can be made without his or her participation in the proceeding." The statute defines "parties to the proceeding" as "the complainant, respondent, necessary parties and persons permitted to intervene as parties in a proceeding with respect to a complaint filed under this article" (Executive Law § 292 [17]). Thus, the statute makes clear that a "respondent" is distinct from a "necessary party." In *Matter of Ambrosio v State Div. of Human Rights*, we dealt only with whether a necessary party had been promptly served with a complaint, not whether amending a complaint to add a respondent after the statute of limitations had run was proper. We think it plain that the issues presented in *Matter of Ambrosio v State Div. of Human Rights* and the matter at bar are so dissimilar as to require an entirely different analysis.

the proper parties, the action would have been timely commenced against him or her as well" (*Alvarado v Beth Israel Med. Ctr.*, 60 AD3d 981, 982 [2009]; *see Buran v Coupal*, 87 NY2d 173, 178, 181 [1995]; *Bumpus v New York City Tr. Auth.*, 66 AD3d 26, 34-35 [2009]).

The Court of Appeals observed in *Buran* that

"a court would be justified in denying a plaintiff the benefit of the doctrine in order to prevent delay or disruption in the normal course of the lawsuit. Application of the doctrine in such circumstances would likely result in prejudice to the adversary and, as noted above, bar application of the doctrine under the second prong" (87 NY2d at 181).

The relation-back doctrine is particularly helpful in the proceeding before us. The doctrine is rooted in the purpose of the statute of limitations and concerns about whether it is "unfair" to add a defendant after the statute of limitations has expired if the unnamed defendant knew or should have known that, but for the mistake of the plaintiff, it would have been named as well (*see Brock v Bua*, 83 AD2d 61, 63-64, 68 [1981]).[2]

We now consider the matter before us. Inasmuch as it is undisputed that Murphy was directed to be joined as a respondent more than 20 months after Fitzgerald's employment was terminated on June 2, 2006, the day she complained about the alleged harassment, the joinder of Murphy as a respondent in February 2008 was untimely unless it related back to the timely complaint filed against Alliance in August 2006.

█ The first prong of the relation-back test was satisfied, because the claims against Murphy arose out of the same transactions or occurrences as those against Alliance (*see Buran v Coupal*, 87 NY2d at 178; *Quiroz v Beitia*, 68 AD3d 957, 959 [2009]; *Alvarado v Beth Israel Med. Ctr.*, 60 AD3d at 982-983). Additionally, the third prong was met because Murphy should have known that, but for Fitzgerald's mistake in omitting him as a respondent in her complaint, the proceeding would have been timely commenced against him as well (*see Buran v Coupal*, 87 NY2d at 181).

---

2. Although *Brock v Bua* referred to the "excusable" mistake of the plaintiff in that case, the Court of Appeals held in *Buran v Coupal* (87 NY2d 173, 176, 179 [1995]) that it was not necessary for the plaintiff's mistake to be excusable to apply the relation-back doctrine; mere mistake is sufficient.

The second prong, however, is more complicated. Certainly, in his capacity as the president of Alliance, Murphy, who personally approved the termination of Fitzgerald, was united in interest with Alliance inasmuch as the original complaint put him on notice that his own conduct might be at issue (*see Rio Mar Rest. v New York State Div. of Human Rights*, 270 AD2d at 48; *Preferred Elec. & Wire Corp. v Duracraft Prods.*, 166 AD2d 425, 426-427 [1990]). However, matters had changed significantly by the time the Division amended the complaint. Murphy was joined as a respondent 15 months after the complaint was filed and three months after the initial hearing against Alliance. At that initial hearing, in the absence of notice to him that he would be added as a respondent, Murphy appeared pro se on behalf of Alliance, testified on its behalf, and examined critical witnesses. Further, during the first day of the proceeding, the Division's application to add Bailey as a respondent was under consideration by the ALJ and, at the end of that first day, the ALJ denied the Division's application for the very reason that the statute of limitations had already run against him, and determined that the addition of Bailey at that point would cause delay. Given that assurance, Murphy could no longer have been chargeable with the knowledge that he still would be subject to being added as a respondent, especially when no request to add him had been made. It was only after that ruling was made that Murphy's own involvement came to light, and it came to light through Alliance's own case. Under the circumstances, we conclude that Murphy would be unfairly prejudiced by application of the relation-back doctrine. As the Court of Appeals noted in *Buran v Coupal* (87 NY2d at 181), application of the relation-back doctrine may be denied when the circumstances are such that joinder of a party not originally named would disrupt the normal course of the proceedings in a manner likely to result in prejudice, thus barring "application of the doctrine under the second prong." That was the case here.

Indeed, it was patently unfair when the Commissioner reopened the hearing with Murphy now as a respondent (*cf. Matter of Tartaglione v Board of Commrs. of Police Dept. of Vil. of Briarcliff Manor*, 301 AD2d 655, 657 [2003]). Even more unfair, the reopened hearing was held before the same ALJ who had already proposed findings adverse to Alliance based, in part, on Murphy's actions. Accordingly, we conclude that the complaint was not "reasonably and fairly" amended to add Murphy individually, and that the Commissioner abused his

discretion by ordering the amendment (*cf.* CPLR 7803 [3]). Therefore, we grant that branch of Murphy's petition which was to annul the determination adopting the recommendation and findings of the ALJ that he aided and abetted Alliance's discriminatory conduct and retaliation and imposed penalties against him, and we dismiss the amended discrimination complaint insofar as asserted against him.

■ As to that branch of the Division's cross petition which was to confirm the determination against Alliance, substantial evidence supports the Commissioner's determination that Fitzgerald was harassed by a supervisor because of her sex and that Alliance condoned the harassment by failing to conduct a proper investigation upon being informed of the supervisor's misconduct (*see* Executive Law § 298; CPLR 7803 [4]; *Matter of New York City Health & Hosps. Corp. v New York State Div. of Human Rights*, 236 AD2d 310, 310-311 [1997]; *Matter of Father Belle Community Ctr. v New York State Div. of Human Rights*, 221 AD2d 44, 56 [1996]). Substantial evidence also supports the finding that Alliance, which fired Fitzgerald mere hours after she complained about the harassment to its human resources manager, retaliated against Fitzgerald for lodging a complaint (*see Noho Star Inc. v New York State Div. of Human Rights*, 72 AD3d 448, 449 [2010]; *Matter of Club Swamp Annex v White*, 167 AD2d 400, 401-402 [1990]).

In addition, we perceive no basis for disturbing either the award of damages for mental anguish (*see Matter of Father Belle Community Ctr. v New York State Div. of Human Rights*, 221 AD2d at 57), or for back pay (*see Matter of Mize v State Div. of Human Rights*, 33 NY2d 53, 56 [1973]).

Murphy's remaining contentions either are without merit or need not be addressed in light of our determination with respect to the amendment of the complaint.

Accordingly, the branch of the petition which was to annul so much of the determination as adopted the recommendation and findings of the administrative law judge that John Murphy unlawfully aided and abetted Alliance Mortgage Banking Corp. in unlawfully discriminating against the complainant based on sex and in retaliating against her by terminating her employment, and awarded the complainant the principal sums of $26,527 in damages for back pay and $25,000 in compensatory damages for mental anguish, to the extent payable by John Murphy, is granted, the petition is otherwise denied, and the proceeding is otherwise dismissed; and the branch of the cross

petition which was to enforce so much of the determination as adopted the recommendation and findings of the administrative law judge that Alliance Mortgage Banking Corp. unlawfully discriminated against the complainant based on sex and retaliated against her by terminating her employment, and awarded the complainant the principal sums of $26,527 in damages for back pay and $25,000 in compensatory damages for mental anguish, to the extent payable by Alliance Mortgage Banking Corp., is granted, Alliance Mortgage Banking Corp. is directed to pay the complainant the sum of $26,527, plus interest at the rate of 9% per year from July 18, 2007, and the sum of $25,000, plus interest at the rate of 9% per year from July 3, 2009, the cross petition is otherwise denied, and the cross proceeding is otherwise dismissed.

MASTRO, J.P., LEVENTHAL and MILLER, JJ., concur.

Adjudged that the branch of the petition which was to annul so much of the determination as adopted the recommendation and findings of the administrative law judge that John Murphy unlawfully aided and abetted Alliance Mortgage Banking Corp. in unlawfully discriminating against the complainant based on sex and in retaliating against her by terminating her employment, and awarded the complainant the principal sums of $26,527 in damages for back pay and $25,000 in compensatory damages for mental anguish, to the extent payable by John Murphy, is granted, the petition is otherwise denied, and the proceeding is otherwise dismissed, without costs or disbursements; and it is further,

Adjudged that the branch of the cross petition which was to enforce so much of the determination as adopted the recommendation and findings of the administrative law judge that Alliance Mortgage Banking Corp. unlawfully discriminated against the complainant based on sex and retaliated against her by terminating her employment, and awarded the complainant the principal sums of $26,527 in damages for back pay and $25,000 in compensatory damages for mental anguish, to the extent payable by Alliance Mortgage Banking Corp., is granted, Alliance Mortgage Banking Corp. is directed to pay the complainant the sum of $26,527, plus interest at the rate of 9% per year from July 18, 2007, and the sum of $25,000, plus interest at the rate of 9% per year from July 3, 2009, the cross petition is otherwise denied, and the cross proceeding is otherwise dismissed, without costs or disbursements.