In the Matter of New York State Division of Human Rights et al., Petitioners, v Young Legends, LLC, et al., Respondents. [934 NYS2d 628]—

Garry, J.

Between September and December 2006, petitioner Carolan L. Henninge (hereinafter petitioner) was employed by respondent Young Legends, LLC in a franchise sandwich shop located

in the City of Norwich, Chenango County. Respondents Dale Blackwood and Melissa Almonor were the owners and officers of Young Legends and supervised the shop's daily operations. In January 2007, petitioner filed a complaint with petitioner State Division of Human Rights (hereinafter SDHR) alleging that Blackwood subjected her to sexual harassment during her employment.

Following a public hearing at which Blackwood and Almonor appeared without counsel, an Administrative Law Judge (hereinafter ALJ) found that petitioner had been subjected to quid pro quo and hostile work environment sexual harassment and that Blackwood and Almonor were personally liable for the discriminatory conduct in that, as petitioner's employers and daily supervisors, each knew or should have known of the conduct but failed to do anything to address it. The ALJ recommended a damage award in the amount of $1,218.75 for lost wages and $25,000 for mental anguish and humiliation.

Upon administrative review, the Commissioner of Human Rights modified the ALJ's recommended order by increasing the mental anguish award to $500,000. SDHR thereafter commenced this proceeding pursuant to Executive Law § 298 seeking enforcement of the Commissioner's order, and Supreme Court transferred the proceeding to this Court.

Before SDHR's application for enforcement may be granted, this Court is required to review the record to determine "whether the underlying finding is supported by substantial evidence" (Matter of New York State Dept. of Correctional Servs. v State Div. of Human Rights, 28 AD3d 906, 906 [2006]; see Executive Law § 298; Matter of State Div. of Human Rights v Bystricky, 30 NY2d 322, 326 [1972]). In doing so, "we will not substitute [our] judgment for that of the agency where conflicting evidence exists, because it is for the agency to pass upon the credibility of witnesses and to base its inferences on what it accepts as the truth" (Matter of Harrison v Chestnut Donuts, Inc., 60 AD3d 1130, 1132-1133 [2009] [internal quotation marks and citations omitted]).

Petitioner, who was a high school student, testified in detail about Blackwood's "touchy feely" interactions with female employees, his offensive personal remarks and comments laced with sexual innuendo, and the constant pressure he exerted upon petitioner to visit him alone in his apartment. She testified that when she eventually did so, he forced her to engage in sexual intercourse. Thereafter, petitioner returned to work but did not report the encounter to anyone other than to a friend who was not employed by Young Legends because, as she testi-

fied, Blackwood warned her not to, she was frightened, and "[she] needed a job." In December 2006, Blackwood asked her to return to his apartment; when petitioner refused, he swore at her, sent her a series of angry, insulting text messages, and told her that he understood her refusal to mean that she was quitting her job. Petitioner did not return to work thereafter. Blackwood introduced no evidence controverting petitioner's account of his conduct or the termination of her employment. Accordingly, the record overwhelmingly supports the determination that petitioner was subjected to both quid pro quo and hostile work environment sexual harassment (*see Mauro v Orville*, 259 AD2d 89, 91-92 [1999], *lv denied* 94 NY2d 759 [2000]) and, thus, SDHR is entitled to enforcement of the Commissioner's order against Blackwood and—through his ownership interest—Young Legends (*see Patrowich v Chemical Bank*, 63 NY2d 541, 542 [1984]; *Matter of State Div. of Human Rights v Koch*, 60 AD3d 777, 777-778 [2009]).

We reach a different conclusion as to Almonor. The original complaint, filed in January 2007, charged only Young Legends and Blackwood with violations of the Human Rights Law; the complaint did not mention Almonor and was not personally served upon her. On December 17, 2007—four days before the fact-finding hearing—SDHR served Almonor, as well as the other respondents, with an amended notice of hearing and complaint that added Almonor as a respondent. SDHR contends that the untimeliness of this service is immaterial because Almonor—who appeared at the hearing and acknowledged that she received the amended documents—had actual notice, and the time limits imposed by the Executive Law are directory only (*see* Executive Law § 297 [4] [a]; *Matter of R & B Autobody & Radiator, Inc. v New York State Div. of Human Rights*, 31 AD3d 989, 991 [2006]). We disagree, finding that the complaint was not merely untimely, but also completely failed to provide Almonor with any notice of the allegations against her.

To hold Almonor, as an owner of Young Legends, liable for Blackwood's conduct, proof was required that she "became a party to [the harassment] by encouraging, condoning, or approving it" (*Matter of State Div. of Human Rights v St. Elizabeth's Hosp.*, 66 NY2d 684, 687 [1985] [internal quotation marks and citation omitted]; *accord Matter of Grand Union Co. v Mercado*, 263 AD2d 923, 924 [1999]). The original complaint contained no such allegation. When SDHR amended the caption to add Almonor's name, no corresponding alterations were made in the body of the complaint. As before, the complaint made allegations only against Blackwood, did not assert that Almonor

knew of his conduct or condoned it, made no demand to hold her personally liable, and—outside the caption—never mentioned her name at all. The primary purpose of a pleading is to " 'adequately advis[e] the adverse party of the pleader's claim or defense' " (Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3013:2 at 159, quoting *Foley v D'Agostino*, 21 AD2d 60, 63 [1964]; *see* CPLR 3013). This purpose is served when "from [its] four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (*Gizara v New York Times Co.*, 80 AD3d 1026, 1027 [2011] [internal quotation marks and citations omitted]). The subject complaint, containing no factual allegations whatsoever against Almonor, plainly fails to satisfy this test. Not only did the complaint fail to state a cause of action against Almonor, but she was not provided with notice of the allegations against her, as required by due process and the Executive Law, nor with any opportunity to prepare a defense (*see* Executive Law § 297 [1], [2] [a]; [4] [a]; *compare Matter of Town of Lumberland v New York State Div. of Human Rights*, 229 AD2d 631, 633-634 [1996]).[1]

Moreover, nothing about the hearing served to place Almonor on notice that any claim was being made against her; instead, the record reveals that, throughout the proceedings, everyone present, including the ALJ and SDHR's counsel, apparently proceeded on the assumption that Blackwood was the only potentially liable individual. SDHR's counsel never suggested or argued that Almonor should be held liable and made no motion to amend the complaint to add allegations against her. The ALJ stated more than once that the purpose of the hearing was to determine Blackwood's liability; he was given opportunities to call and cross-examine witnesses, introduce evidence, and examine and object to petitioner's exhibits. No such opportunities were afforded to Almonor, and Blackwood explicitly advised the ALJ that he was acting on behalf of no one but himself. The record also contradicts SDHR's contention that Almonor did not request an opportunity to participate in the hearing. Near the end of the hearing, after Blackwood stated that he did not intend to call any witnesses, Almonor intervened to ask, "Since

---

1. SDHR contends that this issue cannot be addressed in this Court because Almonor did not object on this ground at the hearing (*see* Executive Law § 298). However, in the circumstances presented here, it would be unreasonable to require an unrepresented litigant served with a complaint that made no allegations against her to recognize the need to object to that absence. We find that the exercise of our discretionary power to overlook the failure to object is warranted (*see New York Inst. of Tech. v State Div. of Human Rights*, 40 NY2d 316, 321 [1976]).

I'm also named on there, separate from Young Legends, am I allowed to speak, I guess, on my behalf or on the documents you presented?" The ALJ responded, "You should be a witness," told Almonor that she would be permitted to speak only if she were sworn in and subject to cross-examination, and—after Blackwood again stated that he did not wish to call any witnesses—made no further reference to Almonor's request. At the close of the hearing, SDHR's counsel argued in summation that Blackwood should be held liable for sexually harassing petitioner, and Blackwood made a statement on his own behalf; neither mentioned Almonor, who was not given an opportunity to speak. In effect, Almonor was first notified that she might be held personally liable for Blackwood's conduct when the ALJ issued the recommended findings of fact and order determining that she was so liable.

In addition to the failure of notice, the record does not contain the requisite substantial evidence supporting a determination that Almonor is personally liable to petitioner (*see Matter of State Div. of Human Rights v Koch*, 60 AD3d at 777-778). The ALJ determined that Almonor was liable based upon a November 2006 letter, in which another employee advised Almonor that she was resigning because of Blackwood's objectionable conduct. This letter was admitted into evidence, the ALJ asked Almonor whether she had received it, and Almonor confirmed, in one word, that she had. No further testimony was elicited as to when the letter was received, whether Almonor spoke further with the other employee, investigated the allegations, or took any corrective action in response, and no other evidence on this issue was presented during the hearing. Thus, SDHR failed to satisfy its "affirmative burden" to prove that Almonor condoned the discriminatory conduct (*Matter of State Univ. of N.Y. at Albany v State Human Rights Appeal Bd.*, 81 AD2d 688, 689 [1981], *affd* 55 NY2d 896 [1982]).

Finally, we do not agree that the award of $500,000 for petitioner's mental anguish and humiliation is "reasonably related to the wrongdoing, supported by the record and comparable to other awards for similar injuries" (*Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights*, 53 AD3d 823, 826 [2008]).[2] Blackwood's conduct—including, among other things, forcible sexual intercourse with a high school student—was unquestionably reprehensible. However, in proceedings of this nature, damage awards for mental anguish and humiliation are to be based upon actual

---

2. The amount awarded for lost wages is not in dispute and is supported by the record.

pecuniary loss and emotional injury; "[c]are must be taken to insure that the award is compensatory and not punitive in nature" (*Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights*, 225 AD2d 856, 859 [1996]; *see Matter of State of New York v New York State Div. of Human Rights*, 284 AD2d 882, 883-884 [2001]). Here, the testimony of petitioner and her mother demonstrated that she suffered significant emotional distress as a result of the harassment. Petitioner testified that she felt "violated" and frightened; she wept as she testified that, more than a year after the events in question, she still experienced difficulty in trusting others. Her mother testified that during petitioner's employment by Young Legends, she seemed distressed and irritated, withdrew from friends and family, and lost interest in activities she had previously enjoyed. After leaving her employment, petitioner sought medical testing for communicable diseases as well as counseling. However, she attended only two counseling sessions, apparently required no further medical or psychological treatment, and within several months was able to return to work for a different employer. Considering all of the evidence and upon review of comparable sexual harassment and discrimination cases, we find that the Commissioner's award is excessive and must be reduced to $50,000 (*see e.g. Matter of New York State Dept. of Correctional Servs. v New York State Div. of Human Rights*, 53 AD3d at 826-827; *Matter of R & B Autobody & Radiator, Inc. v New York State Div. of Human Rights*, 31 AD3d at 991; *Matter of State of New York v New York State Div. of Human Rights*, 284 AD2d at 884; *Matter of Town of Lumberland v New York State Div. of Human Rights*, 229 AD2d at 636-637).

Rose, J.P., Lahtinen, Kavanagh and McCarthy, JJ., concur. Adjudged that the order of the Commissioner of Human Services is modified, without costs, by annulling so much thereof as (1) found respondent Melissa Almonor personally liable for discriminatory conduct towards petitioner Carolan L. Henninge and (2) awarded said petitioner $500,000 as compensatory damages for mental anguish and humiliation; petition dismissed against respondent Melissa Almonor, petition granted to the extent that respondents Young Legends, LLC and Dale Blackwood are directed to pay petitioner Carolan L. Henninge, within 30 days after service upon them of this Court's decision, the sum of $1,218.75 for lost wages, with interest from February 15, 2007, and the sum of $50,000 as compensatory damages, with interest from the date of the order of the Commissioner of Human Services; and, as so modified, confirmed.