Kavanagh, J.
*1443 After the Commissioner of Human Rights adopted the ALJ’s decision and order, petitioner commenced a compliance proceeding, and, in that proceeding, determined that respondents had not paid any of the damages awarded Jackson. As a result, petitioner brought this CPLR article 78 proceeding seeking to compel respondents to pay these damages, which was transferred to this Court (see Executive Law § 298).[1]
The Commissioner’s finding of unlawful discrimination must be affirmed if supported by substantial evidence (see City of New York v State Div. of Human Rights, 70 NY2d 100, 106, [1987]; Matter of New York State Div. of Human Rights v Stennett, 98 AD3d 512, 513 [2012]; Matter of New York State Div. of Human Rights v Young Legends, LLC, 90 AD3d 1265, 1266 [2011]; Matter of Vinikoff v New York State Div. of Human Rights, 83 AD3d 1159, 1162 [2011]; Matter of Tosha Rests., LLC v New York State Div. of Human Rights, 79 AD3d 1337, 1339 [2010]; Matter of Price v Southwest Airlines, Inc., 66 AD3d 1267, 1268 [2009], lv denied 14 NY3d 858 [2010]). Here, the Commissioner initially determined that it had been established at the hearing that Jackson, as a result of racial discrimination, was forced to work in a hostile environment and that his employer was aware of this activity and, at the very minimum, tolerated it. A hostile work environment exists if the “workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim’s employment and create an abusive working environment” (Matter of Price v Southwest Airlines, Inc., 66 AD3d at 1269 [internal quotation marks and citations omitted]; see Matter of Bowler v New York State Div. of Human Rights, 77 AD3d 1380, 1381 [2010], lv denied 16 NY3d 709 [2011]). In that regard, Jackson testified that while he was at work, racial insults were repeatedly directed at him by other employees, and this behavior continued unabated despite numerous complaints that he made about it to respondents. John White, another employee of respondent who worked with Jackson, corroborated *1444 Jackson’s claim regarding the racial insults used against him and confirmed that Jackson had complained about this conduct to respondents.
As for the work environment, Jackson testified that racial insults were accompanied by inappropriate physical contact making conditions at job sites “so intolerable, difficult, or unpleasant that a reasonable person would have felt compelled to resign” (Matter of Gold Coast Rest. Corp. v Gibson, 67 AD3d 798, 799 [2009]; see Matter of Price v Southwest Airlines, Inc., 66 AD3d at 1270). In particular, Jackson recalled walking off a job site on July 26, 2004 when another employee insulted him with a racial slur and then jabbed him in the buttocks with a painting pole. This episode, and other instances where Jackson was the object of race-based conduct, provided substantial evidence for the Commissioner’s determination that Jackson was the victim of racial discrimination while employed by respondents and, as a result, was constructively discharged from his position (see Matter of Imperial Diner v State Human Rights Appeal Bd., 52 NY2d 72, 78-79 [1980]).
While Jackson was undoubtedly subject to illegal racial discrimination while employed by respondent, we do not agree that the decision to add Heflin as a respondent, given its timing, represented a sound exercise of the ALJ’s discretion. That decision was made only after the statute of limitations for filing such a complaint against Heflin had long since expired, and some two years after Jackson had originally filed his complaint with petitioner. Moreover, the hearing on these charges had already been conducted, and Heflin had testified as a witness without the benefit of legal counsel (see Executive Law § 297 [4] [a]; [5]; see also 9 NYCRR 465.3 [e]; Matter of Freudenthal v County of Nassau, 99 NY2d 285, 291 [2003]; Matter of Murphy v Kirkland, 88 AD3d 267, 273 [2011]). While a complaint under certain circumstances may be amended, it must be done “reasonably and fairly,” and should not result in any undue prejudice to any party to the proceedings (Executive Law § 297 [4] [a]). In addition, a party should only be added as a respondent after the statute of limitations has expired if the claim against that party relates back to the same conduct that was the subject of the original complaint (see Matter of Murphy v Kirkland, 88 AD3d at 273-274; Matter of Adler v Hooper, 87 AD3d 633, 635 [2011], lv denied 19 NY3d 801 [2012]; Rio Mar Rest, v New York State Div. of Human Rights, 270 AD2d 47, 48 [2000], lv denied 95 NY2d 763 [2000]; Matter of Town ofLumberland v New York State Div. of Human Rights, 229 AD2d 631, 633-634 [1996]). Before being added, it must be determined that the party is *1445 “united in interest with the original party, and by reason of that relationship can be charged with notice of the institution of the [proceeding] such that he or she will not be prejudiced in maintaining a defense on the merits, and . . . the additional party knew or should have known that, but for a mistake by the [petitioner] as to the identity of the proper parties, the [proceeding] would have been brought against the additional party as well” (Matter of Adler v Hooper, 87 AD3d at 635; see CPLR 203 [b]; Buran v Coupal, 87 NY2d 173, 178 [1995]; Matter of Murphy v Kirkland, 88 AD3d at 275; Rio Mar Rest, v New York State Div. of Human Rights, 270 AD2d at 48).
Here, while the claims against Heflin undoubtedly arose out of the same transaction, petitioner was obviously aware long before the hearing of Heflin’s involvement in the matter and his proprietary interest in the company that employed Jackson. Yet, to date, it has failed to provide any justification for not naming Heflin as a respondent in the original complaint, or adding him as a party to this proceeding before the statute of limitations had expired. The prejudice to Heflin from such a delay is self-evident, and the decision to add him as a respondent, absent some justification, constitutes an abuse of discretion (cf. Matter of New York State Div. of Human Rights v Young Legends, LLC, 90 AD3d at 1268-1269; see Matter of Murphy v Kirkland, 88 AD3d at 277).
As for damages, Jackson was entitled to $8,690 for the wages he lost as a result of being constructively discharged (see Matter of New York State Div. of Human Rights v Young Legends, LLC, 90 AD3d at 1269; Matter of Goldberg v New York State Div. of Human Rights, 85 AD3d 1166, 1167-1168 [2011]). Jackson established he lost wages from the time he left respondent’s employ in July 2004 until he was classified in December 2004 as permanently disabled and no longer able to work (see Executive Law § 297 [4] [c] [iii], [iv]).[2] Further, “[a]n award for compensatory damages for mental anguish must be upheld if it is reasonably related to the wrongdoing, is supported by substantial evidence, and is similar to comparable awards for similar injuries” (Matter of Goldberg v New York State Div. of Human Rights, 85 AD3d at 1168 [internal quotation marks and citations omitted]; see Matter of Tosha Rests., LLC v New York State Div. of Human Rights, 79 AD3d at 1341). The award to Jackson of $15,000 in compensatory damages for the stress, depression and anxiety he suffered while employed by respondent enjoys ample support *1446 in the record and is comparable to other awards made involving similar discriminatory activity (see Matter of Tosha Rests., LLC v New York State Div. of Human Rights, 79 AD3d at 1341 [internal quotation marks and citations omitted]). As such, it will not be disturbed.
Mercure, J.P., Rose, Stein and Egan Jr., JJ., concur. Adjudged that the order of the Commissioner of Human Rights is modified, without costs, by annulling so much thereof as added Eric Heflin as a respondent and found him personally liable for discriminatory conduct towards Randolph Jackson; petition dismissed to that extent and petition granted to the extent that respondent A.R. Heflin Painting Contractors, Inc. is directed to pay respondent Sherri D. Jackson, as executor of the estate of Randolph Jackson, within 30 days after service upon it of this Court’s decision, the sum of $8,690 for lost wages, with interest from September 30, 2004, and the sum of $15,000 as compensatory damages, with interest from the date of the order of the Commissioner of Human Rights; and, as so modified, confirmed.

. While respondents commenced a CPLR article 78 proceeding to annul the determination and petitioner filed a cross petition to enforce it, neither petition, upon transfer to this Court, was pursued.

. Jackson was entitled to $10,200 in lost wages, or $600 a week for the 17 weeks from when he left his employment until he was placed on disability, minus $1,510 that he earned during this time period for temporary work.